IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HOWARD LANGFORD, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NOTICE OF REMOVAL WITH |
| | ) | JURY TRIAL REQUESTED IN |
| FATHER FLANAGAN'S BOYS' | ) | OMAHA, NEBRASKA |
| HOME, | ) | |
| | ) | |
| Defendant. | ) | |

#### NOTICE OF REMOVAL

TO THE HONORABLE JUDGES OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEBRASKA:

Defendant Father Flanagan's Boys' Home hereby gives notice of removal
of this action to the United States District Court for the District of Nebraska,
pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446. As grounds for this
removal, Defendant states as follows:

#### FACTUAL BACKGROUND

1.      On or about December 5, 2022, Plaintiff filed his Complaint
against Defendant in the District Court of Douglas County, Nebraska, with Civil
Summons issued by the District Court of Douglas County the following day. A
Process Service Return was filed with the Court on December 13, 2022,
documenting service upon Defendant Father Flanagan's Boys' Home by personal
service on December 13, 2022.

2.      As required by 28 U.S.C. § 1446(a), attached hereto collectively as
"Exhibit A" and incorporated herein by this reference are copies of the
Complaint, Praecipe, and Summons, served upon Defendant which constitute all
of the process, pleadings, and orders served upon Defendant in this case to date.

Attached hereto collectively as "Exhibit B" and incorporated herein by this reference is a copy of the Process Service Return dated December 13, 2022.

3.       In his Complaint, Plaintiff purports to assert claims related to alleged violations of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, and the Nebraska Fair Employment Practices Act. Plaintiff seeks damages against Defendant.

## THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER §§ 1331 AND 1367

4.       This case is properly removable because the Complaint could have originally been filed in this Court pursuant to 28 U.S.C. § 1331, as it alleges questions of federal law. Specifically, Plaintiff alleges claims for relief pursuant to the Civil Rights Act of 1964, the Civil Rights Act of 1866, and the Civil Rights Act of 1991.

5.       This remainder of this case is properly removable pursuant to 28 U.S.C. § 1367, because the alleged state-law claims arising under the Nebraska Fair Employment Practices Act arise from the same case or controversy as those allegedly arising under the Civil Rights Act of 1964, the Civil Rights Act of 1866, and the Civil Rights Act of 1991.

6.       Defendant is located in Boys Town, Nebraska, which is in the jurisdiction of Douglas County, Nebraska.

7.       Plaintiff is a resident of Douglas County, Nebraska.

### A.       Removal to This District Is Proper

8.       Pursuant to the provisions of 28 U.S.C. § 1441(a), the United States District Court for the District of Nebraska is the federal district court embracing the place where the state court action is currently pending.

### B.       The Petition for Removal Is Timely

9.       This Notice is timely filed within thirty (30) days of service of Plaintiff's Complaint on Defendant, pursuant to 28 U.S.C. §1446(b). Plaintiff's Complaint was filed on December 5, 2022 and summons was issued on December 6, 2022. Defendant was then served with the Complaint on December 13, 2022.

Not more than 30 days have elapsed since Defendant was served with the Complaint.

**C.**     **Notice of Petition of Removal**

10.     Defendant will promptly provide Plaintiff with written notice of the filing of this Notice of Removal, and will promptly file a copy of this Notice with the Clerk of the District Court of Douglas County, Nebraska.

**D.**     **Reservation of Rights**

11.     To the fullest extent allowed by law, Defendant reserves all rights, including defenses, and objections to this action, including defenses and objections as to the appropriate forum, jurisdiction, and service. The filing of this notice of removal is subject to and does not waive any such defenses and objections. Defendant further reserves the right to amend or supplement this notice of removal.

**JURY REQUEST AND PLACE OF TRIAL**

12.     Defendant requests that this action be tried by jury, and that the trial be held in Omaha, Nebraska.

WHEREFORE, Defendant, having removed the case now pending in the District Court of Douglas County, Nebraska, No. CI 22-9327, respectfully requests that this case proceed with adjudication before this Honorable Court as though Plaintiff had originally filed it in this Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

FATHER FLANAGAN'S BOYS' HOME,
Defendant

By:    Baylor Evnen Wolfe & Tannehill,
LLP
Union Bank Place
1248 O St., Ste. 900
Lincoln, NE  68508-1499
(402) 475-1075
cschmidt@baylorevnen.com
sfoster@baylorevnen.com

By:    ***/s/ Christopher M. Schmidt***
Christopher M. Schmidt, # 26096
Susan M. Foster # 24192

### CERTIFICATE OF SERVICE

I, Christopher M. Schmidt, hereby do certify that I am one of the attorneys of record for the Defendant and that on the 12th day of January 2023, I served a copy of the foregoing Notice of Removal (with all Exhibits) by postage-paid, regular United States mail on:

Howard L. Langford
6653 Curtis Ave.
Omaha, NE 68104

By:    ***/s/ Christopher M. Schmidt***
Christopher M. Schmidt, # 26096

IN THE DISTRICT COU~~RT~~   002541135D01   ~~NEBRA~~.SKA

HOWARD L. LANGFORD,

        Plaintiff,       )     Civil No. *CI22- 9337*

                     )

vs.                 )     COMPLAINT

FATHER FLANAGAN'S BOYS' HOME

                     )

                     )

        Defendant,     )

**#6 FILED**
**IN DISTRICT COURT**
**DOUGLAS COUNTY NEBRASKA**

**DEC 0 5 2022**

**JOHN M. FRIEND**
**CLERK DISTRICT COURT**

     1. This is an action brought by the Plaintiff to complain of the Defendant's racially discriminatory practices as prohibited by Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§2000(e) *et seq.,* and the Civil Rights Act of 1866. 42 U.S.C. § 1981, 42 U.S.C. § 1981(a) et seq,, the Civil Rights Act of 1991 for damages which exceed $100,000.00.  . The Nebraska Fair Employment Practices Act Neb. Rev. Stat. § 48-1101 through Neb. Rev. Stat. § 1126.  The Nebraska Fair Employment Practices Act Neb. Rev. Stat. § 48-1104 and Neb. Rev. Stat. § 48-1114(1)(a).

     2.     This Court has jurisdiction of this cause of action under 28 U.S.C. § 1343, 28 U.S.C. § 1331, 43 U.S.C. §§ 2000(e), 28 U.S.C. § 1367, *et seq* .and 28 U.S.C. § 1658.The Court has original jurisdiction over the claims arising under federal law and concurrent jurisdiction over the state law claims. Plaintiff has attached hereto as Exhibit "A" a copy of a right to sue letter received from the Equal Employment Opportunity Commission. The EEOC right to sue letter was received by the Plaintiff on August 19,

EXHIBIT A

2022. Plaintiff has attached hereto as Exhibit "B" a copy of an Administrative Dismissal dated August 31, 2022 and received from the Nebraska Equal Opportunity Commission (NEOC) on September 6, 2022. The NEOC states that the deadline for filing an action directly in state district court is 90 days after the receipt of this notice.

3.      Plaintiff is a black male resident of Omaha Douglas County and the State of Nebraska within the limits of the District Court of Douglas County Nebraska. At all times material hereto he was an employee of the Defendant, Father Flanagan's Boys' Home and worked as a Stationary Engineer. The Plaintiff is a City of Omaha First Grade Stationary Engineer.

4.      Defendant Father Flanagan's Boys' Home located at 14100 Crawford Street, Boys Town, NE. 68010 within the jurisdiction of the District Court of Douglas County Nebraska.

5.      Defendant, Father Flanagan's Boys' Home, is a nonsectarian, nonprofit organization governed by a volunteer board, and its affiliates operate as Boys Town. Defendant, Father Flanagan's Boys' Home ("Boys Town") owns and operates Boys Town National Research Hospital and clinics located in the City of Omaha. Defendant employs an estimated 500 to 1000 employees with a multibillion dollar net worth and has at all times material hereto been an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 (e) *et seq.*.

6.      The Plaintiff filed the following complaints of discrimination against Father Flanagan's Boys" Home with the N.E.O.C. /E.E.O.C. which resulted in the following charge numbers NEB 2-21/22-1-52422-RS, EEOC 32E-2022-00144 attached as Exhibit "B". Plaintiff incorporates Exhibit "B" by reference as if fully set forth herein

this paragraph.

7.      The Plaintiff is a black male who made protected  internal ethics complaints against the Defendant and stated that he would be filling other protected external complaints of racial discrimination, physical abuse, civil right violations, safety violations and injuries against the Defendant.

8.      The Plaintiff  is a City of Omaha First Grade Stationary Engineer of the highest grade with a License # LIC-200 dated 3/24/92. The Plaintiff has renewed and keep his City of Omaha First Grade Stationary License valid continuous from 3/24/92 and will be valid through 12/31/2023 (Lic-1603923 ref.)

9.      Defendant, Father Flanagan's Boys' Home advertised for an open "third shift (i.e., night shift) Stationary Engineer." The Plaintiff personally interviewed with Chief Engineer Tina Walton who is white and Director of Facilities Operations Joe Bilek who is white during February 2021. During the interview the Plaintiff was asked what qualifications did he have? The Plaintiff replied that he had a background in Stationary Engineering consisting of over 25 years working in Power Plants. Plaintiff  had advanced from a Third Grade Stationary Engineer to the highest level First Grade Stationary Engineer. The Plaintiff had finished three college degrees consisting of one associate degree and two bachelor degrees.

10.      Defendant offered and the Plaintiff accepted employment in the position of Stationary Engineer – 3rd Shift.

The pertinent parts of the Plaintiff's written signed agreement states:

It is with great pleasure that Boys Town offers you the position of Stationary Engineer –   3rd Shift.

Compensation

We are offering you an hourly wage of $24.50, plus a $2.50 3rd shift differential. This full-time non–exempt position is eligible for overtime pay after 40 hours in a workweek. Pay is subject to deduction for taxes and other withholdings as required by applicable law. Paychecks are distributed via direct deposit on the 7th and 22nd of each month for all employees.

Vacation & Benefits

Vacation is accrued at 4.33 hours per pay period and equates to 104 hours annually. You are eligible to use vacation as it accrues.

Orientation

New Hire Orientation

You are scheduled to attend this mandatory orientation on 03/15/2012. Details concerning this program will follow.

Please indicate your acceptance of our offer by signing below.

11.     Defendant Father Flanagan's Boys' Home Stationary Engineer Job position- 3rd Shift. Tuesday-Saturday 11:00 pm to 07:00 am was offered to and was accepted by the Plaintiff.

12.     Defendant Father Flanagan's Boys' Home Stationary Engineer Job Description required a City of Omaha Third Grade Stationary Engineer License.

13.     Defendant Father Flanagan's Boys' Home Stationary Engineer Job Description required 2 to 3 years of experience including 1 year actual operating experience.

14.     Defendant, Father Flanagan's Boys' Home's "City of Omaha Third Grade Stationary Engineer License requirement" is based on the *Omaha Municipal Code Chapter 40 Sections 40-176 through Sections 40- 202.*  (Ord. No. 42174, § 2, 9-15-20)

Sec. 40-176. Required.

No person shall operate, or cause to be operated, any boiler plant unless there shall be in charge of such plant an experienced person who holds a certificate of the proper grade in good standing certified by the board and issued by the permits and inspections division as provided in this article, or who holds a temporary permit as provided in section 40-189. (Ord. No. 42174, § 2, 9-15-20)

Sec. 40-199. Display.

EXHIBIT A

Every holder of a certificate issued under the provisions of this article shall display his certificate in a conspicuous place in the plant where he is employed. The chief mechanical inspector is herewith empowered to suspend, for a period not exceeding 90 days, the certificate of any person failing to comply with the foregoing provision. (Ord. No. 42174, § 2, 9-15-20)

15.     During the Plaintiff's employment as a First Grade Stationary Engineer at Defendant's power plant on or about March 15, 2021, the Defendant alleged that the Plaintiff's First Grade Stationary Engineer License did not look right.

16.     The Plaintiff's first date of employment with the Defendant was March 15, 2021. The Plaintiff had presented to Chief Engineer Tina Walton the following hard copies as proof that was qualified to legally operate as a First Grade stationary engineer: a) First Grade Stationary Engineer's certificate of examination by the Board of Engineer Examiners dated March 24, 1992 b) First Grade Stationary Engineer's license with a current annual renewal # LIC -1603923 valid from 1/01/ 2021 until 12/31/2021, c) both (a) & (b) must be displayed in a conspicuous place in the Defendant's power plant with all of the other qualified stationary engineers licenses. Defendant's Stationary Engineer Job Description is based on the *Omaha Municipal Code Chapter 40 Sections 40-176 through Sections 40-205*. (Ord. No. 42174, § 2, 9-15-20)

17.     During the Plaintiff's employment as a First Grade Stationary Engineer at Defendant's power plant from March 15, 2021 to May 17, 2021, the Defendant alleged that the Plaintiff was not qualified to work the position of Stationary Engineer – 3rd Shift. Tuesday – Saturday 11:00pm to 07:00 am. which paid a hourly wage of $24.50, plus a $2.50 3rd shift differential with overtime for the Sunday and Monday 11:00pm to 07:00am.

18.     On or about March 21, 2022, Chief Engineer Tina Walton inputted hours and supposedly became aware of the Plaintiffs rates of pay were too much although the rates were in agreement with Plaintiff's written signed agreement.

19.     The Defendant's third shift stationary engineer weekly schedules consisted of two Engineers (Plaintiff and Simeon). Each engineer working 5 nights out of

the 7 nights per week. Both of the two engineers worked 3 nights together in the power plant and two nights working alone per week. The third shift was never designed to be a single engineer 7 nights per week power plant shift.

20.    Chief Engineer Tina Walton started a campaign of misinformation and disparagement regarding the Plaintiff's credential experience and three college degrees.

21.    During the Plaintiff's employment as a First Grade Stationary Engineer at Defendant's power plant from March 15, 2021 to May 17, 2021, the Defendant alleged that the Plaintiff was incompetency.

22.    When the Defendant set it hiring requirement of the City of Omaha Third Grade Stationary Engineer License, it also set the means by which competency or incompetency of a Stationary Engineer is to be determined by the following authorities. These authorities are the City of Omaha Board of Engineer Examiners, the City of Omaha Municipal Code Chapter 40 Section 40-176 through Section 40-241, the American Society of Mechanical Engineers (ASME) and/or the State of Nebraska under the Nebraska Boiler Inspection Act. The definitive reference source of steam plant operation is the 10th Edition or latest edition of Steam Plant Operations by Woodruff, Lammers and Lammers.

> Sec. 40-176. Required.
>
> No person shall operate, or cause to be operated, any boiler plant unless there shall be in charge of such plant an experienced person who holds a certificate of the proper grade in good standing certified by the board and issued by the permits and inspections division as provided in this article, or who holds a temporary permit as provided in section 40-189. (Ord. No. 42174, § 2, 9-15-20)
>
> Sec. 40-199. Display.
>
> Every holder of a certificate issued under the provisions of this article shall display his certificate in a conspicuous place in the plant where he is employed. The chief mechanical inspector is herewith empowered to suspend, for a period not exceeding 90 days, the certificate of any person failing to comply with the foregoing provision. (Ord. No. 42174, § 2, 9-15-20)

EXHIBIT A

23.     The Plaintiff has never been even accused of a violation, nor his license suspended or cancelled for any cause from any of the authorities or entities during his twenty five year career as a First Grade Stationary Engineer.

24.     On March 15, 2021, Plaintiff was also required to attend a mandatory day time New Hire Orientation over at campus headquarters. Before heading over to the New Hire Orientation, The Plaintiff could not help but notice the burnt smell of an oil fire. Although the Plaintiff could smell the burnt oil and see the lock out tags mounted on the boiler, the Plaintiff inquired about if there had been a boiler fire. Chief Tina Walton said no?  Chief Engineer Tina Walton stated that she would begin working the Plaintiff into his third shift position.

25.     Defendant Father Flanagan's Boys' Home is an Equal Opportunity Employer.

26.     Under the terms and conditions of employment the Plaintiff was to be provided with all tools and P.P.E. equipment needed for completion of his tasks the same as all the Defendant's other white stationary engineers. One of the problems for the Plaintiff was the stationary engineer tool lockers were to be kept locked at all times. Chief Engineer Tina Walton did not give the plaintiff a personal key to access tools from the tool lockers. All of the other white stationary engineer had personal keys to the tool lockers. All of the other stationary engineers including the Plaintiff were between about 59 to 67 years old and would need to take a minute because of hand tightness during removal of large sets of screws or nuts.  When the plaintiff was finally given a personal key after 30 days and discovered the many battery powered time saving tools in the lockers it was obviously not a fair race. A manual screwdriver compared to a battery powered screwdriver. A manual nut driver compared to a battery powered nut driver. There were even keys to a forklift and high lift in the stationary engineer common tool lockers.

27.     The Defendant Father Flanagan's Boys' Home is a **Siemens operated centralized power plant which supplies utilities to the square mile Siemens**

7

computer computer campus networks.

28.     The Plaintiff's prior 9 years on night shift alone at C.H.I. working as a stationary engineer showed his experience operating **Siemens computer operated centralized power plant which supplies utilities to large C.H.I. computer campus networks.**

29.     The Plaintiff's prior 8 years on night shift alone at U.N.O. working as a stationary engineer showed his experience operating computer operated centralized power plant which supplies utilities to a large 100 acre computer campus networks.

30.     The Plaintiff's prior 8 years at the City of Omaha working as a stationary engineer showed his experience operating computer operated centralized power plant which supplies utilities to computer campus networks.

31.     The Defendant Father Flanagan's Boys' Home refused the Plaintiff a Siemens password to access and operate the Siemens operated centralized power plant which supplies utilities to the square mile Siemens computer campus networks.

32.     During the Plaintiff's employment with the Defendant he was never granted a password to access and operate the Siemens computer operating system by Chief Engineer Tina Walton.

33.     Under the terms and conditions of employment the Plaintiff was to be granted a password to access the Siemens systems for his third shift position. Chief Engineer Tina Walton treated the Plaintiff differently by refusal of a password while granting passwords to lesser white third grade engineers. This was a handicap in both time and space for the Plaintiff that other Stationary engineer did not have to endure. Father Flanagan's Boys' Home campus is a square mile.

34     The Plaintiff is a licensed First Grade Stationary Engineer, "qualified to operate any boiler," was not even allowed to fully operate Father Flanagan's Boys' Home Warehouse and Boys Town National Headquarters low pressure boilers. A person

without a license could have operated Boys Town low pressure boilers. However, Chief Tina Walton did not consider the Plaintiff qualified or competent to even operate low pressure boilers.

City of Omaha's Mechanical Code Sections 40-181 states:

A First Grade Stationary Engineer's certificate shall entitle the holder to take charge of and operate any steam, power, and refrigeration or compressor plant within the city.

. (Ord. No. 42174, § 2, 9-15-20)

35.    Chief Tina Walton had the Plaintiff spend his first three to four weeks mostly on his knees in the torturous prayer position cleaning and scrubbing in retaliation for reporting protected safety and racial issues concerning her and John Brown.

36.    On April 13, 2021, the Plaintiff qualified for a 30 day Performance Bonus from the Defendant as a Stationary Engineer.

37.    For example, Chief Walton told Plaintiff it took him twelve hours to complete a so called simple taping and painting task that should have only take one-and-a-half hours to complete. The Plaintiff did that job on his knees without the requested knee pads for the most part.. Chief Tina Walton standard was "not a drop of red on the blue." She demanded that it be **vacuumed**. Cleaned with liquid surface cleaner then **rinse off** and allow it to **dry**. Taped off with cheap white low stick masking tape instead of blue painter masking tape. Chief Tina Walton ordered and used a **water based kind of the** latex paint instead of acrylic or epoxy for the concrete and/or steel bases. The paint did not hold up to the boiler system water. The paint faded and washed out within a month. The Paint was applied with small one or two inch paint brushes. When the first coat of paint **dried,** apply a second coat of paint. When the second coat **dried,** remove all masking tape. Take all the $1.00 paint brush to sink. Rinse out **under water** and save.

38.    Additionally, there **are two tank bases** to be painted not one. The above process as required by Chief Tina Walton is impossible to perform in a continuous process. Take a minute to unpack Chief Tina Walton's statement that "Walton told Plaintiff it took

EXHIBIT A

him twelve hours to complete a simple taping and painting task that only took her one-and-a-half hours to complete. The drying time between each step is greater than Chief Tina Walton's "one-and-a-half hours to complete." Take a look at the size of these dimpled concrete bases that required paint coating. The drying time between each of the above partial steps is two to four hours. Wet paint surface have to dry before they will adhere to an additional coat. Wet washed surfaces have to dry before masking tape will adhere. Look at the detail work between and under the pumps and bases. The tank system is live.(running) and at a temperature of about 250 degrees. The expectation of Walton and Bilek for the Plaintiff to complete this painting within one-and-a-half hours (90 minutes) it is impossible!

39.     Plaintiff was assigned to clean the cooling tower.  The Plaintiff inspected the cooling tower. The cooling tower was one of the dirtiest cooling towers the Plaintiff had seen in his twenty five years of stationary engineering. So the Plaintiff requested knee high boots size 13EE, a protective tyvek disposable coverall suit and hardened knee pads for the annual cooling tower clean out from Chief Tina. The defendant Chief Tina ordered one size fits all boots too small to fit the Plaintiff, and said she could not locate any protective tyvek disposable coverall or the right type of hardened knee pads. The Plaintiff complained to Ms. Woods from H.R. and Director of Facilities Operations Joe Bilek (both white).  Chief Walton stated that no other Stationary Engineer has ever raised safety concerns or requested similar PPE to perform the annual cooling tower clean out ever. When the Plaintiff asked the other stationary engineers where they got their boots and PPE last year they said the Defendant had supplied them. The Plaintiff requested that they do an investigation.  Chief Tina became mad that the Plaintiff would go over her head to H.R.. Chief Tina position became that the Plaintiff will just have to find and buy his own PPE. for his big monkey feet. Regardless of rather or not the Plaintiff has boots the Plaintiff was going to get in that cooling tower and clean it with the fire hose. The appropriate size of the Cooling Tower was (50ft X 35ft X 20ft). This was an impossible amount of work to be completed in six hours. So impossible that Chief Tina sent the Plaintiff back out for an additional two days of cleaning with the fire hose.

40.     The Defendant Ms. Woods from H.R. failed to do full and fair

investigations instead of ignoring the Plaintiff's complaints. During the over twenty five years that Plaintiff had cleaning cooling towers, he had never seen the mess that Chief Tina Walton made by simply draining the cooling tower six months ago in October 2020 and leaving the cleaning it until April 2021. By doing that Chief Tina had weathered all the muck, chemical deposits, algae and hardness bonded upon the surfaces. Defendant alleged the Plaintiff's failure to complete the cooling tower cleaning in six hours was he was not working fast enough. It was obvious Defendant's time estimates were impossible.

41.      The Defendant Ms. Woods from H.R. failed to do full and fair investigations instead of ignoring the Plaintiff's complaints. Had Ms. Woods entered the cooling tower and looked up at the upper interior media she would have seen that it oozed with brown and white muck. The top parts of the cooling tower are not solid. It is structured with porous media material. Any time that it rains, high humidity or snows the media allow the muck to drain (drip) out through and foul the interior surfaces. During the off season from October 2020 to March 2021 here in Nebraska we have snow, ice, rain, high humidity and wind. After this weathering from six months ago in October 2020 to March 2021 there was a heck of a mess in the cooling tower media, cooling fins interior and exterior. However, Tina Walton continued to send the Plaintiff out to clean the cooling tower again and again by himself alone.

42.      The Defendant's told the Plaintiff that the Father Flanagan's Boys' Home stationary engineer job description required him to work in hazardous material, acids and other water treatment chemicals. The Plaintiff requested the PPE as an accommodation to his skin medical condition but was referred back to Chief Tina. Over time the Plaintiff became soaked with the slime and muck because of the large amount of water flowing from the fire hose used in the cleaning of the cooling tower. The lack of proper P.P.E. caused the plaintiff to develop rashes and skin infections. The Plaintiff required antibiotics. Plaintiff never received protective boots of protective height to protect his two lower extremities such as below knees, lower legs ankles and toes from chemicals in the Defendants cooling tower cleaning.

43.    The Plaintiff has a skin condition. The skin condition diagnosed as ichthyosis vulgaris. It doesn't have a known cure. It is not contagious to others. It has to be managed by by wearing P.P.E. in order to minimize contact with certain chemicals especially acids, biocides, caustics and legionnaires disease bacteria.  Although the skin condition is genetic and forever, the Plaintiff's past employers have issued free and full P.P.E. for everyone cleaning the Cooling Towers. The flare up began with lines in the top side of the seams of the toes, ankles and knees. As the lines get deeper the burning sensation becomes worst. Then the lines connect and formed patches. Some of the patches swell up. Some of the other patches of top skin fall off. In the area where the skin has fallen off, there is now open exposed skin. The risk of infection at that point becomes very high.

44.    **On or about March 22, 2021**, Complainant filed an Ethics Point Report alleging that he was assigned unsafe work assignments without appropriate personal protective equipment. Complainant stated that he had been assigned to (1) clean the cooling tower at the Power Plant, which had chemicals in it; (2) do work that required him to be on his knees for long periods of time; and (3) complete tasks that Tina Walton (5 ft, 3 inch height & shoe size 7) alleged that she could do as opposed to the Plaintiff (6 foot height & shoe size 13EE) which made access impossible. The Plaintiff 13EE shoes are 13.25 inches long and 5.20 inches wide. The Plaintiff also reported Tina Walton and John Brown racial slurs of "monkey feet" and "Dago." "Monkey feet" is a disparaging term which tries black people large feet to monkey feet animal characteristics.   "Dago" is a disparaging term meaning not of the majority race.

45.    **On or about March 23, 2021**, Tina Walton threatened and intimidated the Plaintiff about taking his safety concerns relating to P.P.E., his large feet and shoes over her head to H.R. and Joe Bilek

46.    **On April 2, 2021**, Senior HR Nicke Green and Senior HR Leah Woods ("Woods") and the Plaintiff meet to discuss safety concerns. In the April 2, 2021 meeting the Plaintiff described to H.R. ways that injuries could occur to Plaintiff under Tina Walton's retaliatory supervision. The Plaintiff further told H.R. how placing a person in the prayer

positions that Tina Walton was placing the Plaintiff in what is considered a stress based torture positions. Tina Walton knew or should have known that working on hard, curved (boiler tube shells and chiller tube shells) or inclined surfaces (cooling tower south side of the basins) is very time consuming and can generate more pressure on the Plaintiff's knees and toes then flat surfaces. **Tina Walton's position was the Plaintiff was going to do what she want done regardless of P.P.E. or safety.** Plaintiff had spend so much time working on his knees on hard surfaces at Boys Town that the Plaintiff had bruised both knees and had pressure ulcers on the tips of his toes. The lack of proper P.P.E. also caused the Plaintiff to develop rashes and skin infections around the ankles. The Plaintiff required antibiotics for the skin openings and bleeding. The Plaintiff also required time off for some damaged medical skin removal. The Plaintiff had talked to both H.R. and Tina Walton about his need for time off due to injury because of lack of P.P.E.  Time off requests and accommodation requests was ignored, denied or unanswered before being discharged the defendant advertised the Plaintiff's open position. Furthermore, Tina Walton based the denial on the false basis of the Plaintiff having not accrued any time off.

47.     The Complainant's **March 22, 2021, March 23, 2021** and **April 2, 2021** meetings concerning P.P.E., safety and working conditions identified Tina Walton as one of the bad actors. The Plaintiff also stated that the gist of the matter was that Tina Walton was using her authority to retaliate and discriminate against the complainant. **Yet H.R. allowed Tina Walton to supersede the general duty clause of "safety first"** and other safety rules as described on pages of the Boys Town Employee Handbook under the heading

**Health and Safety in the Workplace**

Relevant section partially states: It **is the responsibility of each employee that all tasks be conducted in a safe and efficient manner** while complying with all local, state and federal safety and health regulations, programmatic standards and special procedures established by Boys Town.

Exhibit Page 34 of the Boys Town Employee Handbook

48.     Standards related to Boys Town's Code of Conduct

Relevant section partially states:

EXHIBIT A

**Integrity: Anti-Retaliation Policy**

Retaliation against any employee for making a good faith report of alleged violations of Boys Town's policies, opposing any practice believed in good faith to be unlawfully harassing or discriminatory, requesting a reasonable accommodation in good faith, participation in an investigation or otherwise pursuing his/her legal rights is strictly prohibited. All forms of unlawful retaliation are prohibited, including any form of discipline, reprisal, intimidation, or other form of retaliation for participating in any activity protected by law.

Exhibit Page 38 of the Boys Town Employee Handbook

49.     On April 14, 2021, Chief Engineer Tina Walton ("Walton"), Director Joe Bilek ("Bilek"), and Senior HR Leah Woods ("Woods") met with Plaintiff. Instead of talking about the Complainant's safety issues, Boys Town announced a new policy.

Boys Town stated: **"The expectation is for you to complete tasks as assigned whether they are in your job description or if they are other duties as assigned. Stating you cannot or will not complete a task is not acceptable and is considered insubordination".**

Boys Town further stated: "Howard stated that he has better ways of doing things but Tina wants things done her way. I(Woods) advised Howard that if he has recommendations on different ways to do things, that is fine, but as with any position, we need him to learn the Boys Town way to do things first.

I(Woods) advised that ultimately, if my manager wants something done a particular way, I(Woods) am going to need to complete the task the way she instructs me to".

50.     Management knew this from the Plaintiff's prior protected complainants on March 22, 2021, March 23, 2021 and April 2, 2021. **The Plaintiff never was insubordinate. The Plaintiff never refused to work.** Even by Father Flanagan's Boys' Home own words they represented the alleged problem as finishing the work but they wanted it done faster. Chief Tina would wait until 1p.m. and then assign a three hour task that need to be done before 3p.m. shift change. Overtime was not allowed.

51.     The H.R. position that the Tina Walton way will be allowed first permitted Tina Walton to come up with some of the most dangerous, torturous and time consuming ways to retaliate against the Plaintiff. Boys Town states "we need him (Plaintiff) to learn the Boys Town way to do things first." There are safety signs posted at Father Flanagan's Boys' Home stating "Safety First". **The reason that safety is first is because there may not be a second chance for an employee to perform a task before injury or death.** One of the caveats in regard to insubordination is that if a task is unsafe or impossible to complete in a given amount of time it is not insubordination. Father Flanagan's Boys' Home could have maintained a safe workplace for all by seeking safe working methods form management, the

Plaintiff and other employees. Boys Town chose the "Boys Town way" and formed a de facto discrimination policy where Tina Walton and management attempted a bypass of safety concerns by falsely converting the narrative into alleged insubordination. Boys Town could have maintained a safe workplace for all by seeking safe working methods form management, the Complainant and other employees. Boys Town chose the "Boys Town way" and formed a **de facto** discrimination **policy** where Tina Walton and management attempted a bypass of safety concerns by falsely converting the narrative into alleged insubordination.

52.   On about May 5, 2021, If the beginning of the Transcript is reviewed it is clear from John Brown's description that he does not follow the above Soot Buster Operation Instructions or safety guidelines. John Brown admits that he has no experience with boiler tube cleaning machines when he states."**Not me, I all ways had lances and torches. All kind of shit that was manual."** Next John Brown states**: "Stop with the gun."** The Soot Buster Gun does not have any switches on it to stop the steel brushes from rotating or the pulsator (vibrator). The Soot Buster Gun is pneumatic powered. There are two ways to "Stop the gun." One way is to **close the main air supply located eight feet to the Plaintiff left and four feet lower than the board. The other way to "stop the gun" is to turn around from your working position walk back eight feet on the eight inch wide board avoiding cables and hoses to the end of the board. The foot switch is located there. Turn off the foot switch.** These two ways of stopping the tube cleaner in the Tina Walton set up prevents the Complainant from a quick safety shutdown in the event of an injury or accident.

The set up consisted of a single 8 foot wooden board (**working platform**) with **dimensions of length 8 feet, width 8 inches and thickness of 1- 1/8 inches.** The board (**working platform**) was supported at the two ends at **a height of 4 appropriately feet and 2 inches.** At one end of the board there was a six foot A frame ladder rang support and at the other end the board rest on the boiler tube sheet shell edge. On the ladder end of the 8 foot board the foot air switch was positioned on top of the board. The tube cleaner cable container with instruction was on the floor in back of the 8 foot on the A frame ladder end. Complainant Diagram Exhibit

The **board (working platform) is perpendicular** to the boiler tube sheet (**working surface**).The board (**working platform**) is not attached at the two ends. The board is not stabilized. It wobbles side to side and deflects up and down as the Complainant steps on it. The 8 inch wide and 1-1/8 thick board is not safe.  The Complainant can be heard telling both Tina Walton and John Brown the set up problem when he states: "**One thing that I am wondering is if we got a wider board. Here is my shoes, See what I am dealing with. We got a wider board?"** The Complainant showed them his 13EE shoes (13.25 inches long and 5.20 inches wide) in comparison to the eight inch wide board (**work platform) supporting him**. The Complainant showed Tina Walton and John Brown that he would have to stand heel to toe in a linear stance to operate the Soot Buster gun. The linear stance resembles a circus high wire walking act or a gymnast on a balance beam. .  In addition to the improper footing the Complainant must reach out at arm length to operate a **five pound continuously rotating brush moving a velocity of three feet**

**per second and vibrating Soot Buster gun**. The Complainant attempted to bring attention to the unsafe working conditions while cleaning the tubes. The Plaintiff stated questions regarding not having enough time to remove the rotating soot buster brush form one tube and then reinsert it in to the next tube:

> H.L.  Ok, What I am going to do is when you come back. Give me about 5 seconds. So I can get it into the next hole before you sent it back. You are going too fast. Bring it back. You got to give me more time…it got to comeback 1,2,3…then I can get it in the next hole.

> J.B.   I can not control the speed.

> H.L. Oh you can't?

J.B. falsely asserts that he can not control the speed. Although the operation instruction states:

> 10. When the Soot Buster has returned, **shut off the air by the foot switch and move the brush and pulsator to the next tube to be cleaned.**

Furthermore the safety guidelines state:

**Elliott Soot Buster Fire Tube Boiler Cleaner**
**Safety Guidelines**

> Read and save all instructions. Before use, be sure everyone using this machine reads and understands this manual, as well as any labels packaged with or attached to the machine.

> Do not overreach. Maintain Control. **Keep proper footing and balance at all times**

> **Do not leave the system running from one tube to the next. The system should only be running inside a tube.**

> The operator must stand clear of the **hose coils to avoid entanglement**. The hose should only be guided keeping hands well clear of the tube entrance.

The reason that the brush should only be running inside a tube is it protects the Complainant from being stuck or cut by the rotating brush. When the rotating brush extends from the soot buster gun on the cable outside the tube it moves in a cone motion. The cone motion now allows the rotating brush to bounce off the tube sheet and become entangled with the Complainant's hands and/or arms. Since **Tina Walton and John Brown had set up the Plaintiff's work platform isolated eight feet away from the two air shut off sources (close the main air supply valve and depress the foot air switch). These shut-offs positions are not within quick easy reach of the Plaintiff operator.**

16

Again the Plaintiff reminded them that the operation of the soot buster brush was too fast and the working platform unbalanced! Their reply was sarcastically "pull it out quicker" as follows:

> H.L.   Too fast.
>
> J.B.   You got to pull it out quicker.
>
> H.L.   Too fast, I am trying to balance up here.
>
> J.B.   You got to pull it out quicker.
>
> H.L.   I am trying to balance up here on this board. If I had something to be on.

The Plaintiff now knew for sure that his safety was no concern to Tina Walton and John Brown. Their only concern was to race and complete the boiler tube cleaning before the boiler inspector arrived. This accident could have been avoided if they had not felt emboldened by H.R. safety policies short cuts.

      53      The Plaintiff is a First Grade Stationary Engineer (highest level) and has been continuously since 3/24/1992 and License # LIC-1603923 current until12/31/2022. This entitles Plaintiff to operate Father Flanagan's Boys' Home Power Plant on any of the shifts without supervision. An apprentice (non licensed person) may not operate a high pressure power plant without being under the supervision of a licensed Stationary Engineer. The same applies to licensed persons who wish to advance to higher grades of stationary engineering. For example the lowest grade stationary engineer is the third grade. Over the career of a third grade engineer, they may wish to become a second grade stationary engineer in order to operate more complicated power plants. At each stair step to the highest grade first grade engineering license the person must operate **under the supervision** for a period of time before being sighed off to be examined to test for the higher grade license. Prior to 3/24/1992, the Complainant worked under the supervision requirements of Section 40-187, 40-188, 40-193 and 40-197. After becoming a First Grade Stationary Engineer, the **under supervision** requirement no longer apply.   Plaintiff was denied the same benefits and privileges of his First Grade Stationary Engineers License by Chief Tina Walton. Chief Tina Walton knew or should have known better yet she harassed the Complainant. As with any licensed professional, rather a electrician, plumber or

stationary engineer the licensed professional does not lose his license because he changed employers and restart as an apprentice.

CAUSE I

PAY

Plaintiff incorporates paragraph 1 through 53 by reference as if more fully set forth herein

54.    Plaintiff, a black male, was employed by Defendant as a First Grade Stationary Engineer in a Stationary Engineer position.

55.    Plaintiff requested his hourly wage of $24.50 and 3rd shift differential of $2.50 as agreed by signed written employment agreement but it was refused.

56.    Plaintiff filed a written charge with the Nebraska Employment Opportunity Commission in which he claimed to be aggrieved by Defendant alleged pretense of Plaintiff's invalid First Grade Stationary Engineer license.

57.    Plaintiff was aggrieved that the Defendant Chief Tina changed the Plaintiff's 3rd shift schedule which paid a $2.50 per hour for 3rd shift differential and would be working with Simeon(white) who is another qualified First Grade Engineer the same as the Plaintiff.

58.    Plaintiff was aggrieved that the Defendant Chief Tina would not allow the Plaintiff to be left alone on a shift until the Plaintiff's license was allegedly sorted out.

59.     There was nothing wrong with the Plaintiffs license. Defendant was running the Plaintiff out of his employment. Defendant kept the Plaintiff on 1st shift from March 15, 2021 to May 17, 2021 the day he was terminated.

60.     Plaintiff has been damaged as a direct and proximate result of the Defendants' acts and omissions

61.    Wherefore, Plaintiff demands judgment against Defendant as follows:

For a sum of money equal to the wages and 3rd shift differential the Plaintiff would have received had there not been wages and 3rd shift differential withheld due to discriminatory discharge.  For full and fair compensation for injuries and damages

EXHIBIT A

allowed by law. The equal rights under law, the right to make and enforce contracts and the enjoyment of all benefits, privileges and terms of employment.  Plaintiff was denied the same benefits and privileges of his First Grade Stationary Engineer license as the other white lesser Third Grade Stationary Engineers.

CAUSE II

Racial Discrimination

Plaintiff incorporates paragraphs 1 through 61 by reference as if more fully set forth herein.

62.     During his employment, Plaintiff has been treated differently than non-black coworkers by his white superiors in the course of his job.

63.     Plaintiff, a black male, was employed by Defendant.

64.     As a result of racially disparate conditions, Plaintiff filed complaints of discrimination alleging that the discrimination occurred over the span of Plaintiff's employment and that the discrimination was a series of acts to run the Plaintiff out of his employment with the Defendant.

65.      Plaintiff has been damaged as a direct and proximate result of the Defendants' acts and omissions

66.     Wherefore, Plaintiff prays for judgment against Defendant for his special damages, general damages, punitive damages, attorney's fees and costs and other relief as it proper.

CAUSE III

Intentional Infliction Mental Distress

That the Plaintiff incorporates herein as though set out in full, paragraphs 1 through 66 of the General Allegations.

67.     That the amounts in controversy in this mater exceeds the sum of seventy--five thousand dollars, and further that this court has jurisdiction of this cause of action under 28 U.S.C. § 1343.

68.     That the acts alleged herein was done by the Defendant, not only as individuals, but also under the color and pretenses of the Defendant's alleged policies. With disregard to the ordinances, regulations, laws, and usages of the State of Nebraska,

EXHIBIT A

City of Omaha's and Public Laws of the United States.

69.     That as a direct and proximate cause of the wrongful acts of the Defendant, the Plaintiff suffered bodily pain and suffering, extreme indignities and humiliation, emotional distress, mental anguish, loss of liberty, and has been held up to ridicule before his peers.

70.     That the actions of the Defendant impeded and hindered the course of justice with the intent to deny the Plaintiff the equal opportunity of the laws and equal protection of the law.

71.     That the action of the Defendant, jointly and severally, entitles the Plaintiff to an award of exemplary and punitive damages.

72.     Wherefore, the Plaintiff prays that this court grant judgment against the Defendant herein in an amount to be determined by this court, but not to be less than seventy-five thousand dollars, plus costs, interest, and attorney's fees.

73.     That the actions and inactions of the Defendant, jointly and severally, were extreme and outrageous and performed with the intention of causing severe emotional distress to the Plaintiff herein or with reckless or deliberate indifference to the rights of the Plaintiff and with malice or disregard of the consequences.

74.     Wherefore, the Plaintiff prays that this court grant judgment against the Defendant herein in an amount to be determined by this court, but not to be less than Twenty-five thousand dollars, plus costs, interest, and attorney's fees.

## CAUSE IV

## RETALIATION

.     That the Plaintiff incorporates herein as though set out in full, paragraphs 1 through 74 of the General Allegations.

75.     That the actions and inactions of the Defendant, jointly and severally, were extreme and outrageous and performed with the intention of retaliation against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000 (e) *et seq.,*.

76.     That the actions of the Defendant impeded and hindered the course of justice with the intent to deny the Plaintiff the equal protection of the laws and to force

EXHIBIT A

the Plaintiff from his employment.

77.     That the actions of the Defendant, jointly and severally, entitle the
Plaintiff to an award of exemplary and punitive damages.

78.     That as a direct and proximate cause of the wrongful act of the Defendant,
the Plaintiff suffered extreme indignities and humiliation, severe emotional distress,
mental anguish, and has been held up to ridicule before his peers and the Plaintiff has lost
his right to employment free and clear of the above deprivations.

79.     Wherefore, the Plaintiff prays for judgment against the Defendant for his
special damages, general damages, punitive damages, attorney's fee, interest and other
relief as is proper.

## DEMAND FOR JURY

Plaintiff demands a trial by jury in this matter. Plaintiff requests a jury trial at
Omaha, Nebraska.

A.     The Court grant such relief as may be appropriate, including injunctive
order, damages, costs and attorney's fees.

Dated this  5th day of December 2022.

HOWARD L. LANGFORD

PRO SE

6653 Curtis Avenue

Omaha, NE 68104

(402) 706-5708

**A.     For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address
where case-related papers may be served.  I understand that my failure to
keep a current address on file with the Clerk's Office may result in the
dismissal of my case.

Date of signing: December  5th  2022.

EXHIBIT A

Signature of Plaintiff

Printed Name of Plaintiff    HOWARD L. LANGFORD

## CERTIFICATE OF SERVICE

I hereby certify that on December 5th  2022, I filed the foregoing Complaint to the
Clerk of the IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

HOWARD LANGFORD

22

EXHIBIT A



**EQUAL OPPORTUNITY COMMISSION**

Howard L Langford ,
    Complainant,

vs.

Father Flanagan's Boys' Home,
    Respondent.

)
)
)
)
)
)
)
)
)

**ADMINISTRATIVE DISMISSAL**

NEB 2-21/22-1-52422-RS
EEOC 32E-2022-00144

Pursuant to the **Nebraska Fair Employment Practice Act,** the above referenced case was filed with the Nebraska Equal Opportunity Commission (NEOC). The Commission served the charge on the Respondent. The above-referenced charge was also subsequently filed with the U.S. Equal Employment Opportunity Commission in St. Louis, Missouri.

The EEOC has issued the "Notice of Right to Sue" and has dismissed its file on this case.

Therefore, the Nebraska Equal Opportunity Commission hereby administratively dismisses the above-referenced case due to the Complainant having obtained a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission.

This action becomes effective fifteen (15) days from the date of this Determination. The deadline for filing an action directly in state district court is 90 days after the receipt of this notice. If there are any questions regarding this decision or if the Commission can be of further assistance, please submit them in writing in care of our Lincoln office.

_____
For the Commission

AUG 3 1 2022

_____
Date

EXHIBIT A

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | [X] FEPA [X] EEOC | NEB 2-21/22-1-52422-RS 32E-2022-00144 |

Nebraska Equal Opportunity Commission and EEOC

DATE RECEIVED BY NEOC
**RECEIVED NEOC**
JAN 03 2022
**OMAHA OFFICE**

| NAME *(indicate Mr., Ms., Mrs.)* Mr. Howard L Langford | | HOME TELEPHONE (402) 706-5708 |
|---|---|---|
| STREET ADDRESS 6653 Curtis Ave | CITY, STATE AND ZIP CODE Omaha  NE  68104 | DATE OF BIRTH 6/16/1957 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below )*

| NAME Father Flanagan's Boys' Home | NUMBER OF EMPLOYEES, MEMBERS 201-500 Employees | TELEPHONE (402) 498-1242 |
|---|---|---|
| STREET ADDRESS 14100 Crawford St | CITY, STATE AND ZIP CODE Boys Town  NE  68010 | COUNTY Douglas |
| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* [X] RACE [X] RETALIATION | DATE DISCRIMINATION TOOK PLACE EARLIEST 3/15/2021   LATEST 5/24/2021 [ ] CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I.  I am black and I worked for Respondent from 3/15/2021 until 5/17/2021, most recently as a Stationary Engineer for the Night Shift.  Due to my race, I was harassed, given adverse assignments, subjected to different terms and conditions of employment, and subjected to adverse wages.  I complained about this treatment.  Due to my race and in retaliation for my complaint, I was discharged.

II.  I believe I have been discriminated against on the bases of race and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as Amended, and Sections 48-1104 and 48-1114(1)(a) of the Nebraska Fair Employment Practice Act, in that:

1.  On or about 3/15/2021, I was hired for the Stationary Engineer position for the night shift, which carried a shift differential of an extra $2.50 per hour.  From the beginning to the end of my employment, Chief Engineer Tina Walton (white) made me work on the first shift, with no shift differential.

2.  On or around 3/16/2021, I presented my Certificate of Competency to my supervisor Chief Engineer Tina Walton (white), who looked at it and told me that it didn't look right.  I believe that Walton did not believe that the certificate was valid based on her reaction.  Walton then had me working on menial tasks such as mopping and sweeping the floors, painting, cleaning machines, and cleaning restrooms and lunch rooms.  These tasks should have been assigned to groundskeepers.  These menial tasks were not ever assigned to other Stationary Engineers such as John Brown (white).  Walton also made me do these jobs with poor equipment such as a brush with no handle, and made me preform these tasks on my knees.  Walton also did not let me operate the equipment that I should have been authorized to operate given my certification and licenses.

3.  Near the end of my first week of employment, Walton gave me a work order to clean the cooling towers, which would normally take two people approximately two weeks to do, however Walton wanted me to do it in 6 hours.  I also told Walton that I needed the proper PPE for the job, and she said that she would order it but that I needed to work on it without the proper PPE until it arrived, which was dangerous.

**Continued on page 2**

Howard L Langford  vs. Father Flanagan's Boys' Home
Page 2

4.  On or around 3/22/2021, I needed specific boots for cleaning the cooling tower, and when I told Walton that I needed bigger boots, she said that I had monkey feet.  Also on that day, Walton and Brown were talking and they called me a Diayo, which I was told was a derogatory term in Italian for minorities.

5.  On or around 3/23/2021, I made a complaint to the Ethics Hotline regarding Walton and the comments she made, me not working the night shift, and the work that Walton was having me do without proper PPE.  I met with SR HR Leah Woods (white) on 4/2/2021, and she told me that the PPE was ordered, but that I had to do the jobs until it arrived.  Then on 4/14/2021, Woods, Walton, and Director of Facilities Joe Belik (white) told me that I needed to do whatever Walton tells me, otherwise it was insubordination.

6.  On or around 5/10/2021, Walton gave me a boiler inspection job that she designed to be impossible and very dangerous.  The boiler cleaning job involved standing on a board in the middle of the air and it did not have proper ladders.  Normally this job would take approximately one week, but Walton wanted it done in one day.  Then on 5/17/2021, I was terminated by Walton, Belik, and Woods because according to them, I did not finish my tasks.

7.  My job performance was satisfactory.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | State of _Nebrsla_   County of _Dougine._<br>On this, the _29_ day of _december_, 20 _21_.<br>The Complainant appeared before me, known to me (or satisfactorily proven) to be the person whose name is subscribed to this instrument, and acknowledged that they executed the same for the purposes therein contained. |
| I swear or affirm that I have read the above and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT<br><br>x _(signature)_ 12/29/21 | Notary Public _(signature)_<br>Notary Seal<br><br>GENERAL NOTARY - State of Nebraska<br>KAMAL ADHIKARI<br>My Comm. Exp. November 8, 2025 |

EXHIBIT A

| Nebraska State Court Form | **PRAECIPE FOR SUMMONS** (Civil) |  |
|---|---|---|
| CC 3:31   NEW 09/2021 Neb. Rev. Stat. § 25-502.01 | | 002314176D01 |

IN THE _DISTRICT_ COURT OF _DOUGLAS_ COUNTY, NEBRASKA

_HOWARD L LANGFORD_,
                Plaintiff,

vs.

Case No. _CI 22-9327_

**PRAECIPE FOR SUMMONS** (Civil)

_FATHER FLANAGANS BOYS' HOME_
                Defendant.

Please issue Summons to be served with a copy of the Complaint by:

☒ Sheriff of _LANCASTER_ County, _____
            (county where person can be served)          (state where person can be served)
by personal or residence service.

☐ Constable of _____ County, _____
            (county where person can be served)          (state where person can be served)
by personal or residence service.

☐ Designated delivery service _____
            (pursuant to Neb. Rev. Stat. § 25-505.01)

☐ Certified mail (return receipt requested)

To:

**FILED**
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA
DEC 0 5 2022
JOHN M. FRIEND
CLERK DISTRICT COURT

**NOTE: FILL OUT ONE FORM FOR EACH PERSON TO BE SERVED.**

_CSC LAWYERS INCORPORATING SERVICE_
                (name of person to be served)
_233 SOUTH 13th STREET SUITE 1900_
                (street address where person can be served)
_LINCOLN NE 68508_
                (city and state where person can be served)

Signature _[signature]_            Date _12/5/22_

Name _HOWARD L LANGFORD_

Phone _402 706 5708_

Street Address/P.O. Box _6653 CURTIS AVE_

City/State/ZIP Code _OMAHA, NE 68104_

Email Address _N A_

☐ In Forma Pauperis Order on file

Page 1 of 1
Praecipe for Summons (Civil)

EXHIBIT A

| Image ID: | **SUMMONS** | |
| D00830220D01 | | Doc. No.    830220 |

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
1701 Farnam
Omaha                    NE 68183


Howard L Langford v. Father Flanagan's Boys Home

Case ID: CI 22      9327


TO:  Father Flanagan's Boys Home

**FILED BY**

Clerk of the Douglas District Court
12/06/2022

You have been sued by the following plaintiff(s):

Howard L Langford


Plaintiff:            Howard L Langford
Address:              6653 Curtis Avenue
                      Omaha, NE 68104

Telephone:            (402) 706-5708

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Nebraska Supreme Court Rule 2-208 requires individuals involved in a case who
are not attorneys and representing themselves to provide their email address to
the court in order to receive notice by email from the court about the case.
Complete and return the attached form to the court if representing yourself.

Date:  DECEMBER  6, 2022    BY THE COURT:   John M. Friend
                                              Clerk

EXHIBIT A

Image ID:
D00830220D01

## SUMMONS

Doc. No.   830220

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Father Flanagan's Boys Home
        CSC Lawyers Inc Service
        233 South 13th Street Suite 1900
        Lincoln, NE 68508

BY:  Lancaster County Sheriff
Method of service:  Personal Service

You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

EXHIBIT A

## SERVICE RETURN

Doc. No.   830220

Douglas District Court
1701 Farnam
Omaha                    NE 68183

To: Lancaster County Sheriff
Case ID: CI 22    9327 Langford v. Father Flanagan's Boys Home

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return        $ _____

Copy                          _____

Mileage _____miles        _____

   TOTAL                  $ _____

Date: _____        BY: _____
                                           (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                              _____

Postage $ _____        Attorney for: _____

The return receipt for mailing to the party was signed on _____,_____.

To: Father Flanagan's Boys Home        From:  Howard L Langford
    CSC Lawyers Inc Service                    6653 Curtis Avenue
    233 South 13th Street Suite 1900           Omaha, NE 68104
    Lincoln, NE 68508

ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI220009327
Transaction ID: 0019262221
Filing Date: 12/13/2022 10:00:00 PM CST

```
                    LANCASTER COUNTY SHERIFF'S OFFICE
                        Lincoln, Nebraska  68508
                        Process Service Return
      Of Sheriff's Paper # 213935 to DOUGLAS County DISTRICT Court
 Document No: 830220            Case No: CI22 9327
_____
Received           Returned        Service and Return  $  18.00
12/13/2022         12/13/2022       Copy
_____ Mileage                   .66
                                    Miscellaneous
Type of Process                           Total Fees   $  18.66
         SUMMONS
Copy of COMPLAINT
                                    Paid by LANGFORD/HOWARD
                                    Attorney Code
                                    Witness Fee Paid    $
                                    Clerk Fee Paid      $
=======================================================================
Plaintiff                       Defendant
LANGFORD, HOWARD L              FATHER FLANAGANS BOY
=======================================================================

    Party Served: FATHER FLANAGANS BOYS HOME
                  233 S 13TH ST STE 1900      LINCOLN NE
By leaving with: DEBRA LARSEN/RECEPTIONIST
                 CSC LAWYERS INC SERVICE
    Service Type: PERSONAL
    Service Date: 12/13/2022 , 1233   By: D GUTHARD
-------------------------------------------------------------------------------
```

    I hereby certify that at the time and in the manner herein stated, I
served the within writ, together with copies shown, on the herein named
party(s) a true and certified copy thereof with all endorsements there
on, or returned said writ unserved in the prescribed manner.
    All done in Lancaster County, Nebraska, as required by law.


                              TERRY T. WAGNER, Sheriff
                      By /s/DENNIS GUTHARD


**EXHIBIT B**